We'll call the next matter of the United States of America versus Katzin. The government is the appellant, Mr. Zosmer. Good morning, your honors. May it please the court, Robert Zosmer on behalf of the government. I would like to reserve three minutes for rebuttal. We'll grant that, Mr. Zosmer, and in addition to that, we had understood that there had been a request which procedurally is a little unusual for us to respond to individual appellee advocates, so we'll certainly, not allowing that, provide, as I think this court almost always does, a reasonable flexibility in terms of the amount of time that is required for appropriate rebuttal. Well, I appreciate that, your honor. I understand Amicus has been given five minutes, and if we feel the need to respond to that, I'll ask the court for permission. And we'll certainly look kindly on it. Thank you very much. Well, we've presented a basket of very important issues to this court in the wake of the Supreme Court's decision in Jones regarding the level of suspicion that's required for use of a GPS, whether a warrant is required. Yes, let's pluck from that basket reasonable suspicion. I'm not going to ask you, despite the fact that you look like you have a smile on your face right now, whether you really, really, really means reasonable suspicion ought to be enough. But I have to, really have to ask you at the outset, in asking us to conduct what would necessarily be under reasonable suspicion, a case-by-case reasonableness approach, right? Well, not exactly, your honor. Wouldn't we have to be balancing the invasion of installing and monitoring the GPS for a couple of days against the government need for information? Right. Well, as a class, and first let me say, if I am smiling, please, it's just my customary pleasure of being before the court. It's not a suggestion of that. We share that pleasure, Mr. Zarsky. That's right. Any lack of confidence regarding, we do so strongly about reasonable suspicion, that there are two things that have to happen. First is, this court, and perhaps ultimately the Supreme Court, have to decide what is the standard of suspicion that's required for this type of search. That's a categorical decision that is made regarding this class of search. Do we really have to decide it in this particular case? Well, no, to be honest. If we find good faith, if we find good faith, whatever you mean, and if we look at the worst case scenario, couldn't we just say, well, given the worst case scenario, you need a warrant, probable cause, nevertheless, we find good faith, and that would be the end of it. Couldn't we do that? That is correct. What if we found that, as you next argue, alternatively argue, that aside from reasonable suspicion that there's probable cause here, could we simply say, there's probable cause, in this case, it's not necessary to go to the reasonable suspicion? Yes, the court could do that as well. Okay, well then let me ask you this question, since those seem to be so simple and straightforward. Here's what I'm not getting. Since we're focused on Jones, let's say we say, as the court did in Jones, okay, there's a trespass, do we jump from there to figuring out reasonable expectation of privacy? I mean, there's no warrant here, obviously the GPS was put on, if, as in Jones, there's a finding of trespass, where do we go from there? I think we're past the question of reasonable expectation of privacy. That used to be the test for deciding whether there was a search. So the majority in Jones requires us to look at the trespass analysis, together with some concurrence language. I think it decides that this is a trespass, there was a trespass. I'm sorry, that's my point. In affixing the GPS, and that that was a search. But it left open these very fundamental questions about, well, do you need a warrant for this type of search? What level of suspicion do you need for this type of search? And then also we have the good faith question as to searches that took place before Jones was decided. So we have actually, as the appellant here, the government has presented three independent bases on which we think the district court should be reversed. And so this court could only reach one of them. Now these are very important issues for law enforcement. This is a very important law enforcement tool to use a GPS to track someone who appears to be involved in criminal activity. And that's why ultimately we would like an answer, and I think we'll get one one day, if not from this court, then from the Supreme Court perhaps, as to what level of suspicion is needed and whether a warrant is needed. But progressing in order, there are three different ways in which the government can prevail. We say, and perhaps this is the ultimate answer that ultimately has to be addressed, we say that only reasonable suspicion is needed for this type of search. That's a different analysis from the trespass reasonable expectation of privacy. That's been decided. This is a search, according to the Supreme Court in Jones. But what the Supreme Court has also taught is that there are different kinds of searches. And that some require reasonable suspicion, some require probable cause, some require a warrant, some do not. With regard to reasonable suspicion- But that's what I was trying to hone in on, on the reasonable suspicion issue here. Hasn't the Supreme Court only engaged in the kind of case-by-case reasonableness approach that I referred to before? In cases involving governmental interests more compelling than simple law enforcement interests? No, Your Honor, with respect, the ultimate example is Terry v. Ohio. Terry v. Ohio is pure law enforcement. Was that pure law enforcement or was it officer safety interest? Well, no, officer safety only comes into play if there's reasonable suspicion the person is armed and dangerous. Terry v. Ohio, first and foremost, says you can stop a person, it's a seizure, you can stop a person on the street based only on reasonable suspicion because- Briefly. Briefly. Because the court balanced the level of intrusion involved against the government interest. But the interest is pure law enforcement. Then you can also pat them down if you have reasonable suspicion that they're armed and dangerous. Another example is United States v. Place, which is the detention of- Let's stop right there, because I want to make sure I understand the distinction you're making. You are saying that the Terry search or frisk is justified simply for law enforcement concerns? There's no difference between that and the special interest of officer safety? They're different points. Terry v. Ohio, if we want to go right back to square one, Terry v. Ohio was an officer sees two guys walking back and forth in front of a store and he thinks they're casing the store in order to rob it. He has reasonable suspicion of criminal activity. The Supreme Court holds he is allowed to go up and stop those people, which an officer normally cannot do. An officer cannot come up to me or you on the street and stop our movement based on no suspicion at all. But they can do that. Then there's a second level, which doesn't always apply, which is you can also pat the person down if you have reasonable suspicion he's armed and dangerous. But the primary level of Terry is this is a law enforcement stop because there's suspicion of criminal activity. And what the Supreme Court said there, and in all the other areas in which it has allowed reasonable suspicion, and that's where you get into special needs involving students and things like that. What they've always said is we're going to balance the extent of the intrusion against the government interest. Because the Fourth Amendment does not explicitly require a warrant. A warrant is required where that balancing leads you to say that a warrant is required. But Terry's have always been brief. You're arguing here for something that could go on for an extended period of time. Well, in this case, Your Honor, it actually is brief. And that's very important. I know it was. Well, that's why I said these facts may not be the best facts for us to decide some of the issues you put in front of us. It's two days here. But suppose it was a month. Suppose it was a week. Terry didn't contemplate anything like that. Well, we think the level of intrusion here is very minimal in that you're only observing what is observable to the naked eye anyway. Could reasonable suspicion justify a tracking device on a car for a month? For a month? I don't think the government will present that argument. And that's another very important distinction in this case. What's the difference between a month that you won't and two days that you will? The difference is articulated in Justice Alito's concurrence in the Jones opinion. There is a distinction. With real precision or just in terms of two contrasting durations, neither of which is carefully defined? Exactly. And that's why, of course, we all have jobs is to now pick up the pieces and try to narrow that down. We have presented to this court in the Katzen case, a very strong case, in which it is two-day surveillance. It is short-term. But why isn't two days a long period of time? I think you said a moment ago a period of time, two days, during which everything would have been observable or publicly observable or words to that effect. Why do you conclude that? Because it's reasonable to believe that officers, if they needed to, could readily conduct this surveillance themselves. A month, which is what Jones was about, 28 days, is a totally different story. Why? Resources? Exactly. So that should be our primary concern? Exactly. This is where we come back to Your Honor's question about reasonable expectation of privacy, which the Fourth Amendment is still about, as well as trespass. People's reasonable expectation of privacy, I think, would say, I don't think they're mounting the kind of operation they would need to, to follow me every minute for 28 days. Two days is a different story. And so in the realm of short-term surveillance, which is what this is, we believe that it's a minimal intrusion. In fact, not only is it a minimal intrusion, but what the government obtains by putting a GPS device. It's still a trespass, isn't it? It's still a trespass, and it's a short-term trespass. Suppose we took an old. . . What's a short-term? I'm so sorry. I'm going to, one second. Help me now. Short-term trespass. I'm like, I'm very. . . Short-term trespass is a trespass, whether it. . . Quarry, Klausen, Frazier, whatever term you want to use, it's a trespass. Like it or not, we're back into the old trespass theory. And what I would like to know is if, if in Jones, suppose they used an old-time Knott's beeper, the old going back to that case. Would it still would have been a trespass, wouldn't it? In, in Knott's, I believe so. The. . . I mean, if Jones had involved. . . Something they used to use when they honed in on a car, you know how it is. Right. Well, the distinction. . . It still would have been a trespass under what the Supreme Court said. I'm not sure, because the distinction the Supreme Court draws is whose possession the item is in when the beeper is placed. Now, put that aside. I said if they attached an old-time beeper. . . Oh, on the car. Yeah. Well, it would now be a trespass. We're not going to. . . A trespass is a trespass. That's right, and it's a continuing trespass when it's stuck to the car. But the trespass is of significance only to the extent that it's one theory of getting us to search Villanone, right? Right. And this is a search. It is a search. We know that from Joe. That's right, it's a continuing search, but we submit reasonable suspicion. Our next level, of course, is probable cause, which I think is amply proven in this case. And there we rest on the automobile exception as to why no warrant is required. Well, you had plenty of time in this case. You didn't really need the automobile exception here. What was it? Something versus California back around, what, 91, 92. The officer stops a car for his probable cause. He can search. You didn't really have that situation here, did you? Well, but the Supreme Court, Your Honor, has spoken to that directly. Exigency is not a requirement of the automobile exception. Automobiles are simply accepted from the warrant requirement of the Fourth Amendment. Because of their mobile nature. Because of their mobile nature. And again, because we address matters as a class. And that was an error that the district... But you didn't have that problem, right? But it doesn't matter. The case there is Maryland versus Dyson. In Maryland versus Dyson... But mobility in and of itself isn't the great concern in this case, is it? I mean, that's my problem with your automobile exception argument. And I have to say, speaking only for myself, I mean, my bigger problem here is that the government took the position from the outset that they didn't have to get a warrant. Which I would have thought would be the default position. And that colors various issues here, including the good faith exception argument that's been raised. But mobility as a value in and of itself is not the basis of the automobile exception, is it? It's the fact that mobility may lead to losing evidence. Isn't that what's behind it? That's right. All right. But you're not going to lose evidence here because the evidence doesn't exist yet. The evidence comes about in the future. That may sound metaphysical, but that's what happens here. There is no evidence yet. You want evidence manufactured or developed or however we want to characterize it, but it's in futuro. The reason for the automobile exception, which is to arrest the potential mobility and get inside and get evidence that may otherwise disappear or evanesce, isn't here. Respectfully, I disagree, Your Honor. How so? The evidence is the information regarding the movement of the car. And Justice Scalia specifically says that. He says that this is a search not just in the installation, but in the gathering of information. I do not agree. But in the gathering of information. It isn't a search just from the installation. That's right. It's a search, according to Justice Scalia, installation plus monitor. But the words he uses. Isn't that the distinction between what was raised by my colleagues and what we have here? The automobile exception is, you know, we're there. There's temporal proximity. Here, you're hoping that it'll work out. You think it'll work out. But there's no temporal proximity in the same way that it would arise in the normal automobile exception. There's no evidence yet there's a potential for it. Well, let me, and I know I'm way over my time, but I appreciate that. There's so many issues I would prefer to address. And I want to get to good faith, which Your Honor has mentioned also, if you'll allow that. But with regard to this, let me be a little metaphysical. The gathering information doesn't necessarily mean information regarding a crime. It could be evidence of the absence of a crime. What we say first and foremost is we can't do anything unless we have some suspicion of criminal activity, whether it's reasonable suspicion or probable cause. So once we have that suspicion, we are investigating. Nobody is being charged. The fact that information is gathered that shows that this car doesn't go anywhere, that involves it in criminal activity, is itself relevant to the investigation and is permissible. So when Your Honor says you don't know what you're going to get, that's in the suggestion that, and it may be true, that investigators are looking for evidence of criminal activity. But they're also looking for evidence of no criminal activity. And that's why this is such a useful investigative device. It's the same with the Terry stuff. Well, we're not arguing whether it's useful or not. But what we're saying is this is gathering information relevant to a valid criminal investigation. You need to show it's a valid investigation. You need to have reasonable suspicion or probable cause. But then you are gathering evidence. This is identical to breaking into the car and looking for evidence. The automobile exception allows an officer without a warrant to break into a car. He or she might then find no evidence. That itself is evidence. Now, is your argument then, to perhaps put it another way, that the monitoring produces evidence pursuant to the search, irrespective of whether it's eventually admissible or relevant or even valuable, evidence of a derivative kind? Correct. It produces information. The mere fact of monitoring is going to produce evidence. Correct. Whether it's inculpatory evidence. That's right. Justice Scalia called it information. We're calling it evidence. But it's relevant to the criminal investigation, and it's allowed as long as you have, we say, reasonable suspicion. You might say probable cause. We need to have some level of suspicion. That's the impact of Jones. Before we get to good faith, do either of my colleagues want to ask other questions on what's been developed so far? Yes. Thank you. So nice. Polite colleagues. Don't overestimate. We're going to get back into where we're from, I'm sure. Here's the question that I have for you. I want to go back to minimal intrusion for a moment. So on the one hand, you've described the 48 hours that we have as minimal intrusion. On the other hand, if I heard you correctly, and you'll tell me if I'm wrong, that you thought a week would not fall into the category of minimal intrusion. Yes? No, I wouldn't. I'd say a week would probably be permissible. I think when you get past, you know, warrants are valid for 14 days. That might be a reasonable cutoff. But certainly once we get beyond 14 days, I'm not going to be, I don't think the department is going to be presenting a case to your honors about that. All right. So zero to 14 is minimal intrusion. You've described that as minimal intrusion. For purposes of this argument, yes. I think that's fair. Okay. All right. And that, you know, a really important thing here. This is a difficult area, and I think this is highlighted in the amicus briefs and the appellee's briefs. Which is that we're in an area of evolving technology, and difficult questions presented as a result. And I think it's very important in this area in particular, and the Supreme Court has spoken to this, to move incrementally and to exercise ordinary judicial restraint and take the case before the court. The case before this court is clear probable cause, clear evidence that these men were involved in a string of burglaries, two-day surveillance, which immediately produced the incriminating evidence. That's the case here. And on these facts, we believe that it was appropriate to install the warrant, to install the GPS device without a warrant. There will be more difficult cases coming along, and we'll all be privileged to address those. You know, you raised some standing arguments, and I don't want to dwell on this, but doesn't Moseley really, in this circuit, doesn't Moseley really eliminate those standing arguments? Well, no, because Moseley and then Brennan, which affirmed this court's decision in Moseley, deal with the seizure of a person, where you have a reasonable suspicion to pull over a car, and it's a seizure of everybody in the car. But the search we're dealing with here— Well, at the point when they stopped the car, they were in it. That's right, but the Fourth Amendment interest is being advanced here. They would have had no clause to stop that car if it hadn't been for this monitoring device. You'll concede that. Of course, but the difference is the Fourth Amendment interest. This is a property right here. We have a trespass, as Your Honor has said a number of times. So the interest that's at stake here is the property interest of the person who owns that property. And the property interest was asserted by all three defendants at the district court level, wasn't it? It was. And I don't think the district court ever resolved that as a factual issue. It did not. Now, we've, as I said, presented the three grounds on which, independently, we think this court should reverse. If we lose all three, and if this court affirms the suppression order, then I would suggest on the standing issue the district court does need to resolve the ownership issue as to Mark and Michael Katzen. The district court relied... Didn't Harry Katzen own and drive the car? Wasn't that in the record? He did. He did. He was a registered owner. He was the driver. But if we deem that it was an illegal stop and the good faith exception didn't apply, wouldn't then Mosley, even under your view, Mosley come in and we'd have to rule that they were standing in that situation? You would have to address the standing issue. If we don't prevail on our three arguments, you have to address the standing issue. And then we have an argument that the district court erred in relying on Mosley, that in saying that each individual was stopped here when they were not, their property interests of Mark and Michael, if we prevail on the factual question, were not at issue here. They were occasional passengers in a vehicle on which a GPS had been attached beforehand. The operative case here is really Kylo. Kylo is one of those beeper cases in which the beeper is in the container. And the Supreme Court says it doesn't matter whether there's an interest here or not because the container was not in the possession of the defendant at the time the beeper was installed. That controls this case.  of the vehicle, if they are just passengers who showed up when the GPS had earlier been installed, this is Kylo. And they do not have standing, they do not have a Fourth Amendment. Realizing that you want to get to the good faith exception argument and not have to reserve that for rebuttal, let me again ask my colleagues if they'd like to ask any questions on anything that's been covered so far. I have a little trouble following, and I don't want to beat this to death, but that was a container case, and they put the container in the car. One of two cases, Bax and Mosley was the other one. And you say that controls, again, because they had no interest in the car, the beeper was put on the car. The question in Kylo was, did the government engage in a search when it stuck the beeper inside the container? And the Supreme Court said, no, there was no search at all because this container was in the possession of law enforcement when they installed the beeper. And it was then given to the bad guy, if I can call the person that, who then took it off to try to manufacture whatever he's manufacturing with it. And they said the person had no Fourth Amendment interest because he gets it in the condition it came to him, which already had the beeper in it. And consent was given by the owner. And the consent was given by the owner, the possessor of it. And you're saying in this case, you had an owner of a car, so as to him, there's a search when you put the beeper in, but not as to the other two, because they had no interest at the time that the beeper was put on, is that what you're saying? Exactly. And it's completely different from Oakley. So when we focus on the property interest here, they don't have an interest. Now, if we go back to the district court, because we've lost on every other issue here, but the court agrees with us as to our analysis of standing, then Mark and Michael do want to come forward and present evidence that they really are owners. The district court didn't reach that. It didn't think it needed to, but it did need to. And so that's what it would need to go back to, applying the appropriate analysis. Does that help? I understand that. Thank you. So with regard to good faith, Judge Snickers asked the question, why didn't we get a warrant? And I think that the court should see that the universal practice of law enforcement was not to get a warrant in the GPS situation. The universal practice of law enforcement trumps the text of the Constitution? No, of course not. We now know there was a Fourth Amendment violation. So I've now moved on. If we're talking about good faith, I have moved on from the fact of a violation to the question of application of the exclusionary rule. And what the Supreme Court has been trying to teach us repeatedly in recent years is these are two different things. So for this purposes of my argument, let's accept that the government needed a warrant and did not get one. And therefore, this was a Fourth Amendment violation. Of course, I disagree with that. Tell us what you relied on, because one of the things that's confusing to me is that if there's a divergence of views among a minority of circuit courts, then what is it that is being relied upon in good faith? What's being relied on? The precedent that helps you the most. Right, and not only that, but precedent, Your Honors, that comes from the United States Supreme Court. The difference here, it is not fair to say that there was a division of authority among the courts. In fact, first of all, two things. First, as to the legal issue before this court, what I've called short-term, call it 48-hour surveillance, whatever, there was no appellate decision anywhere that condemned what the government did here. And there were four circuits that supported it. The D.C. Circuit decided its case, which became Jones, four months before the incident in this case. But it involves 28-day surveillance, which, as I've acknowledged, is just a different matter. There was no precedent condemning what the government did here, and what precedent there was supported it. But it's much more than that, because what supported it was the reasoning of the Supreme Court in Knotts and Kyllo. And that can't readily be dismissed. Okay, so before you go to Knotts and Kyllo, I have a question. Now, is your position going to be that the reliance that leads to the good faith exception is the Supreme Court, or is it going to be for circuit court opinions that you just alluded to? Because I just need to know which one, because if it's the circuit court, I have a question now. If it's the Supreme Court, I'll wait and listen. Well, I think it's a combination, Your Honor. I think that what we're dealing with here is the culpability of the police, of the agents. Is it? Is it? I mean, the agents alone didn't make this decision, did they? They just, they consulted... They were consulting with an assistant United States attorney who chose to follow the policy of the Justice Department. Which itself supports a good faith finding, which the Supreme... And which has been based on also a lack of Third Circuit. That's right. But the Supreme Court, in the Millender case, says consultation with the prosecutor is itself evidence of good faith. But I think you have to look at the full legal lay of the land, and Knotts and Kyllo are really important here, as well as the Katz decision that comes before it that establishes the reasonable expectation of privacy test. The reason we are here before Your Honors today is because of Jones. And the Jones decision, a five-to-four decision, reaches its five-justice majority based on a Fourth Circuit... Fourth Amendment rationale, which every observer, judicial and otherwise, had thought was moribund for 45 years. So what you're saying here to FBI agents who are trying to do their job, and to assistant United States attorneys, what you're saying to them is that you've had this reasonable expectation of privacy test as apparently the exclusive test for 45 years. The reasonable expectation of privacy test is applied in Knotts and Kyllo, which explicitly say that there's no reasonable expectation of privacy regarding movement on public streets. That's what's being applied here. And the only way it gets reversed is when five justices, as is their right, revive this theory. But isn't it because those justices drew a distinction between beepers on the one hand, with their limited, as was described, intrusiveness on the one hand, and GPS, which, because of its sophistication, is deemed much more intrusive? They did, but the question we have to address is, can any reasonable police officer be expected to anticipate that? And more importantly, what's the level of culpability? And this is where the Herring decision becomes all important. This cannot be addressed without... You yourself have argued that this is new technology, relatively new technology, that we have questions being presented in various areas where we have new technology. Again, why would the default position not be in light of that, to seek a warrant? Especially where it's here. You know where this vehicle is, and you know where it's going to be. In this case, anywhere, anyway, there would have been an opportunity to obtain a warrant. That is answered, Your Honor, in Herring, and much more specifically in Davis. Davis is the case that says, if you have binding precedent, that an officer can rely on that in good faith. And what did the officer rely on in Davis? He relied on the Supreme Court authority of New York v. Belton that allowed him to do a search incident to arrest, which was overruled in Arizona v. Gant. So the question is, does it have to be binding like that? We say no when we consider the reasoning of Herring, which I'm going to try to get back to. But with regard to Davis... We'll let you get back to it in rebuttal. If you would wrap up at this point, because we have gone well beyond, but we've done it in an effort to cover all the bases before we go to the other side. Sure. What Davis says, Your Honor, the response to Your Honor's question, is that we could enforce the exclusionary rule in order to make the default go get a warrant, and in an evolving situation, make people go to the courts to get dispositive authority. And what Davis says is that is not the fact. The fact is, the purpose of the exclusionary rule is one and only purpose. It is to deter wrongful conduct of police officers, not to achieve other goals. And that's the answer lies in Justice Alito's opinion. Thank you very much, Mr. Zidemer. As we said, we'll have you back on rebuttal. And I believe next up is Mr. Dreyer. Hey, please, the Court, Your Honors. Thomas A. Dreyer, on behalf of Harry Katzen. I am here to discuss two issues, the issues of reasonable suspicion and probable cause. Before I get into those matters, Your Honors, I'd like to just reiterate that I do represent Harry Katzen. There is no standing issue as far as Harry Katzen is concerned. He was the registered owner of the van, and he was the driver of the van when it was pulled over. Your Honors, I think the Court has made clear that what we have here is a trespass. And the Supreme Court in Jones has held that a trespass is a very much more than minor or minimal intrusion in someone's property rights. A trespass is defined... It was a minimal intrusion, though, in a sense, wasn't it? In terms of... In terms of time, in terms of... I mean, they didn't really go into the vehicle. They attached something... Sure, they did so in the early morning hours on an empty street with a detail there to make sure that nobody was going to interfere with what they were doing. So in that sense, it's minimal. But the Supreme Court has said that it's not minimal. It's a major intrusion into a citizen's personal property rights. And the fact that the government thinks it's minimal, I don't think trumps the fact that the Supreme Court does say otherwise. Well, but everybody agrees that what we had was a search here pursuant to Jones. So, I mean, reasonable suspicion. The government argues that to be enough. Even absent reasonable suspicion here, they say, or reasonable suspicion requirement that they have probable cause. I would like to know why, under these facts, you don't think there was probable cause even to get a warrant. Because the probable cause argument rests on the automobile exception to the search warrant requirement. In this case, Your Honors have already alluded to what was happening here. There was no danger that that vehicle would leave when the installation of the GPS... Alright, so you're arguing against the application of the automobile exception, right? Absolutely. Oh, alright. It's not relevant to this facts that are in front of Your Honors here today. Couldn't there be fact situations in which exigent circumstances might require that federal officers or officers in general attach a beeper to a car in which human life might be at risk? I would agree with that. So there should be some sort of an exception for that? I would think, yes. In this situation, you concede that there was reasonable suspicion. Oh, I do not. Oh, you don't? I thought you did. In order for reasonable suspicion to be a search warrant exception, the Supreme Court has said there has to be evidence of criminal activity afoot. How about all the observations that they had in the past? They found people connected with this case in situations where wires had been cut, as I recall. Weren't there a whole bunch of spottings in compromising situations? Sure, there were prior incidents. The most recent one involving... You don't think that would give rise to at least, Terry, reasonable suspicion? Well, Terry doesn't apply because that's an on-the-scene police officer doing his job to try to arrest a criminal. We're not talking about the specific facts of the case. We're asking whether or not a principle derived from the case. In this case, Terry is applicable here. No, I don't think it is. And I think Judge Du Bois' opinion in the Ortiz case out of the Eastern District of Pennsylvania would lay rest to that particular argument. Terry is an exception that applies in... that does not apply to this particular set of circumstances. Why not? I still don't understand what... I mean, you're saying it doesn't, but why wouldn't that level be sufficient? Because there was no police officer there trying to arrest somebody who they had information of. Harry had been under surveillance for a while, hadn't he? By government agents. In fact, they had seen him a number of times, and law enforcement had even found him in a bush, I believe, in a rather proximate position to a Rite Aid store. Am I remembering correctly? Approximately a month before the installation. And I don't think he had exactly the most convincing explanation, or explanations, plural, as to what he was doing there. I think he was searching for a bar, or he was looking for a friend, or some differing set of reasons for why he was there. Am I accurate about that? That is correct, Your Honor. And that was all information that could have been in an affidavit of probable cause for a search warrant. You keep going back and forth between a warrant requirement and whether or not there's probable cause here, and how it relates to the automobile exception. I'm not sure what you're saying, that there was not reasonable suspicion. But what Judge Van Antwerpen and I were just asking you about were both reasonable suspicion, and whether or not the facts here suggested the existence of probable cause, forget no warrant, forget a warrant, is there probable cause here? Based upon facts like that, and if not, why don't those facts give the agents probable cause? Because the probable cause involves the automobile exception to the search warrant requirement. Forget the automobile exception. Probable cause. It's isolated. Was he the one that had the electrician's tools, and they found the wires were cut? Is that how he was? Yes. Put all that together. Don't you think that could amount to probable cause? Yes, I would say that that amounts to probable cause. I mean, you can obviously, you can still win here despite the existence of probable cause if this panel decides that agents should have gotten a warrant. I'm not asking you to give up on anything. I'm asking you why don't these facts at least raise a colorable claim of probable cause, given the duration of the surveillance, given the various situations in which law enforcement found Harry, and given the very questionable circumstances in which he was involved when they Yes, Your Honor. I concede that those facts would arise to the level of probable cause. So, now whether they did the right thing with that probable cause is an issue that we have to decide. That would still be Harry Katzen's argument. I'd like to make a point about the government's argument that this was only a two-day period between the installation and the actual stopping of the vehicle. The government had no idea of knowing when they installed the GPS device how long it would take, if at all, for there to be an actual arrest somewhere down the road. So I don't think, and the Supreme Court in Jones did not lay any claim to the length of the actual surveillance as was done by the D.C. Circuit in the underlying case. So is your point that we should not look at this as Mr. Zausmer has suggested as a minimal intrusion because it just happened to be 48 hours that the intent of law enforcement was it was going to be as long as it was going to take? Correct. And I don't think that the fact that it was just a two-day period in this case has any bearing on the Court's ultimate decision. Well, it's not a two-day case unless there's no evidence that if your clients weren't arrested at the end of this period, at the end of 48 hours, that it was going to stop. Correct. I mean, the GPS would have just kept on until, you know, if they went to Florida for two weeks and then came back, the GPS would still be there. FBI agent Steve McQueen testified that he was at home at night and monitoring the computer while he was in his house and that's when he got information about this particular incident. So that could have been a week later, two weeks later, a month later. He still would have been monitoring, I guess, as long as the battery on the device lasted and then the government probably would have went and installed a new battery if this battery had worn out. Are you the person who's going to do automobile exception? No. No. Okay. Just wanted to make sure. Who on the roster is doing what? Actually, no one is listed as doing it, so you're welcome to do it. If you would like to do it or if it's online for someone else here, we'll wait. That's my responsibility, Your Honors. Once again, the idea is that the fact that the automobile exceptions of the search warrant requirement requires some evidence of the mobility of the car. In this case, we don't have it. There's no concept that they were going to lose evidence, that evidence was going to be secreted or hidden from the government at the time that the search took place. I suppose you did have that situation. I suppose you had an exigent circumstance or a situation where the car could be mobile and they wanted to attach a keeper to it. Could the automobile exception apply then? Yes, it could, Your Honor. Thank you. Okay, thank you. Thank you very much. Thank you very much. Mr. Ciparone. You know, it's poco poco Italiano. May it please the Court, my name is Rocco Ciparone and I represent the I have to say that carefully because it's unusual for me. Mr. Zalzman's lost too, don't worry. I'm figuring out which table to sit at first. I want to pick up on some language that Mr. Zalzman used. I'll address the good faith issue first, if that's okay with Your Honors. And tell Your Honors why adopting the standard that the government proposes with respect to that would really be chaotic and produce chaotic results. I mean, Mr. Zalzman said we all have jobs to pick up the pieces. If we adopt that standard of good faith that the government proposes, which is it can rely on any authority anywhere at any time that supports its position, we'll be picking up the pieces for the next 20 years. If you look at the language in Davis in which it addressed the link letter opinion and the progeny that resulted from that, the Court said that the link letter case dealt with a retroactive application of new Supreme Court rules. And for about 20 years the analysis was a case-by-case basis until the Court adopted a bright line resolution that all future all rulings will be retroactively applied. And what the Court said in Davis was that that was a standard, the predecessor standard, was difficult to apply in a consistent coherent way and would produce strikingly divergent results. If the Court were to adopt the analysis the government proposes we will have hearings out in Aussie, and I'm not trying to cut myself out of work in the future, but we'll have hearings out in Aussie in the District Courts over what reasonable reliance was or was not in each and every case. Well let me challenge you on that. The reason I asked Mr. Zausman the question about Circuit Court versus Supreme Court is if he came here and said that the reasonable reliance was on a minority of Circuit Courts we might come to one decision as opposed to another. Is it reasonable to rely on a minority of Circuit Courts? But he also said that the reasonable reliance was on Supreme Court precedent. I think he said Davis and Herring. I could be wrong but I think those are the two cases that he did. So if you will, we can put aside for the moment the Circuit Court cases. Talk about Davis and Herring and if the reasonable reliance is on those two cases, why is it misplaced? With respect I'm not sure it was Davis and Herring because they were essentially good faith cases but I think he was talking about the Bieber cases and similar cases if I'm not mistaken. You mean Kelo and Karo and Knotts. Knotts and Karo. And those cases clearly did not address the same issue or even similar that was addressed here. Why not? Well that was an extrapolation of the reading of those cases meaning applying those cases to the GPS scenario which does involve emerging and different technology that allows tracking in completely different and more invasive ways. So what? So the argument is I submit that they're not on point and they're not analogous to support the analysis of the government. They're going to require now that U.S. Attorneys have an engineering degree too in addition to a law degree? No, but I do think that the government is pushing the decision toward the agents where I think in terms of relying on the Assistant U.S. Attorney in and of itself can not give the agents good faith either. It's something to look at isn't it? It's a factor to look at but I think we also have to look at and I don't want to go too far down this road. Up until the summer of 2010 you really didn't have anything out there that was negative with regard to this type of monitoring technology did you? Correct, but we also did not have... So on the basis of four months and a couple non-Supreme Court cases, on the basis of that you're saying we shouldn't find good faith? No, I'm saying on the basis of Davis and the progeny and go back to Leon and all the way forward we shouldn't find good faith because the good faith standard should only be interpreted to allow reliance on binding authority whether it's either legislative or binding case law. I say that the good faith exception should only be interpreted... And we had two cases. We had knots in camera from the Supreme Court of the United States. That's binding authority isn't it? I respectfully would say no Your Honor because again that's an extrapolation of those cases to apply to these situations. We had never heard of the whole trespass theory was really laid to rest many years ago. Suddenly it has emerged from the grave again and we get it back in Justice Scalia's opinion in Jones but there was no warning of that was there? Well there was warning in Maynard though and even though it was on a different theory meaning on the expectation of privacy theory the government was on notice that the D.C. Circuit at least had ruled in a way that said this was a search. And again you've got two Supreme Court cases that upheld the placing of a monitoring device in a container and it's placed in a car and they followed the car around and they said they're on public streets. You could follow them in an undercover police car. You're following them on public streets and they make a great deal out of that. I mean what exactly was supposed to put them on notice here? Again I would respectfully submit that Maynard was supposed to put them on notice and again if you interpret the good faith argument to only rely on binding authority I would submit that they are not binding authority on point that the government should have relied on. Supreme Court decisions? Not that Supreme Court decisions aren't binding authority but those cases were not on point as a result to rely on from a good faith perspective. Meaning the government was on notice as a result of Maynard at the very least and as a result of the absence of any binding authority in this circuit. This was an open issue and to pick up on the initial position be to get a warrant and we know here that the government had an ample opportunity because the agent McQueen testified in the district court that the tactical team who placed the GPS unit on the vehicle waited until it was going to be in the area for some other event to make it convenient for them to place the GPS. So there was certainly no exigency to eliminate the possibility of getting a warrant because they decided to do it when it was just most expedient and economical for them to do it. But looking at the case law as it had developed up to that point taking out the last four months, who would have really imagined such a decision as Jones? I mean I have a hard time understanding that. Well again I'm not expecting the government to imagine it. I'm expecting the government to exercise caution if we look at Leon and the underpinnings of it. But why would they want to set the precedent of going for a warrant when they don't need one? Because it's the right thing to do is what a prosecutor and what law enforcement should do is make that decision because it's the right thing to do. In the sense that we should err on the side of protecting Fourth Amendment rights. And when the government looks at a situation and sees competing authority in different circuits and in fact the government's... When we stop people at borders should we now get a warrant before we search them because it's the right thing to do? No because the court has said that's acceptable to do. Well the court said it was acceptable to... I don't suggest that the court... Do we really want to tread a path of right in terms of some kind of moral order as opposed to the text of the Fourth Amendment? I'm not proposing moral but what I'm saying Your Honor is the underpinnings of Leon and the good faith exception all relate to the neutral authority having made an assessment. Whether it's the legislature or a binding court. If you look at all the cases that came through under Leon it was either a warrant or the entry of a warrant in a system or the legislature. Some action by a neutral and detached magistrate, a judicial branch person or a legislative branch person, not an executive branch person like a prosecutor or agents or law enforcement officers and the underpinnings... Leon has been applied in that context consistently all throughout. The good faith exception has been limited to those situations where there has been a neutral and detached arbiter which a prosecutor is not. A prosecutor is a law enforcement officer. They're part of a law enforcement team and so that distinction I think is an important one frankly when we look at the good faith analysis and the framework of it I mean the government actually proves the point to an extent in terms of the unworkability of that standard that they even at page 51 of the brief talk about quarreling over whether Judge Prater's characterization of a minority of circuits was an appropriate characterization. Was it a minority of circuits that decided it? A minority of all the circuits? If we're getting into that kind of in these kind of assessments it's going to be an unworkable standard like link letter that's going to ultimately result in just a chaotic application and divergent results from the good faith perspective. I would like to address the standing argument briefly if your honors permit that as well. So with respect to standing I want to pick up on a question the Judge Greenaway asked because my position is that on behalf of Mark Katzen and Michael Katzen is also similarly situated that if the stop is illegal which is what Mosley says then the individual passengers in the vehicle have a right to seek suppression. I don't like to use the term. They were in the car when it was stopped. They were in the car when it was stopped. But he says Mosley doesn't apply because they weren't in the car when they attached the beeper basically if I understand what he's saying. And that's my interpretation of what the government's argument is as well. And I say Mosley applies because as Mosley squarely says this is a non-bifurcated analysis. Mosley had the opportunity. The car never would have been stopped except for the information. Except for the information and if the court finds that the stop was illegal then I do submit that Mosley controls. It's the seizure of the individual that provides a standing and it's not a search issue. It's now a seizure issue of the individual and Mosley says if you're in a car that is illegally stopped then you have the right to suppress the evidence that is found in the vehicle. So I think Mosley is squarely on point to the extent that your honors find, if your honors find that the stop was illegal, I think Mosley controls and Mark Katzen and Michael Katzen as well clearly have standing to challenge the search or the seizure of the items from the van because it flows from the seizure of the person. I just have a yes or no question. I just want to make sure I understand this. You're saying that Knott's and Kylo, however you pronounce it, support the notion that the good faith exception what the government seeks to rely on in the good faith exception, really they should see no solace in those two cases. Correct. I say that they should see no solace in those two cases with this technology  Correct, your honor. Thank you very much. Thank you, your honor. CLU. Good morning, your honors. My name is Catherine Crump and I am here to represent the Enmigi. Thank you very much for giving us the opportunity to speak on this important case. If I may, I'd like to first use my time to focus on the Jones issue and then if there's any time remaining talk about Davis. After Jones, it is undisputed that attachment of a GPS device to a car and gathering information from that device is a search. Warrantless searches per se are unreasonable and the government has not established that any exception to the warrant requirement applies. Suppose police officers are observing the delivery of ransom money. They don't know where the child is that's been held. They have an opportunity in the spur of the moment to attach a beeper to the car that's being driven by the person who's collecting the money. Would they do that? Should they be able to do that? What exception would that be? Exigent circumstances? What exception would you posit for that? An exigent circumstances exception, your honor. I think, I was really hoping to have the opportunity to address exactly this point. Earlier, your honor mentioned the general rule that a law enforcement agent can still enter the house. And that is true. But if, for instance, a law enforcement agent witnesses a felon fleeing into the home based on the exigency of the situation, the law enforcement agent can still enter the house. Similarly here, even if the general rule is that law enforcement agents must obtain a warrant based on probable cause to attach a GPS device to a car, there could still be an exception to deal with exigent circumstances such as the one your honor sketched out. Do you feel the automobile exception comes into play too here? Yes. The automobile exception is one that I was wanting to devote some attention to. Because the underlying rationale of the automobile exception simply does not apply to GPS. Doesn't the government make a strong point in urging that we apply the automobile exception by saying, look, the basic purposes of it are the inherent mobility of the vehicle and reduced expectation of privacy. And why is that not a valid argument here? That's not a valid argument for two reasons. First of all, the automobile exception was developed originally to deal with the issue of contraband being contained in a car. So does that mean that the point several of us raised in argument that that exactly was what was involved factually in automobile exception cases and that here you don't have the existence of evidence yet? Is that a distinction that's worthwhile to consider? Yes, that's a distinction that's worthwhile to consider in addition to the fact that as in this case as is common in GPS tracking cases, the government knew about the involvement for a long time, had the opportunity to attach a GPS device, and there was no reason why they didn't have the time to attach a warrant. What about Mr. Zosmer's point that what Justice Scalia talked about in the majority opinion in Jones was information, that that's the equivalent of evidence, and inherently what monitoring is going to produce here is evidence? That's true, but I think that supports the idea that the government should obtain a warrant based on probable cause before attaching the GPS device. Because your concern, I presume, is that the government will say okay, Bobby Jones is a predicate felon and he's been in this area for a long period of time and I know I just know he's going to be into some stuff soon, so I'm going to attach a GPS so that we can keep track of Bobby Jones. My concern is that the best safeguard for individuals' privacy is that a law enforcement agent have to go to a neutral party such as a judge to get approval to attach a GPS device to head off circumstances like that. That is why, and I would get to this if I had time to address good faith, I think the government's argument that reliance on a U.S. attorney's approval isn't sufficient, although it may be helpful, because that perversely incentivizes government attorneys to take the most aggressive position possible on Fourth Amendment questions lest they stymie an ongoing investigation. I also wanted to take a minute to address the government... They don't want to run the risk of suppression, though. They may not want to run the risk of suppression, but they wouldn't have to if the fact that a U.S. attorney signed off on a particular course of surveillance was a reason that a court would then find that there is a good faith exception to the requirement of suppression. It's just a factor, though, that we can look at, isn't it, really? That's correct, Your Honor. I did want to take a moment to address the government's most aggressive argument on the Jones issue, which is that the privacy issues at stake here are so de minimis that they are not even required to have probable cause and that reasonable suspicion will suffice. I think the problem with that argument is that the intrusion here is simply too great. As Justice Sotomayor explained in Jones, GPS monitoring creates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations. How about the original rationale of Knotts and Carrow? They could follow the car with an unmarked police car or they have very clever ways of doing this. They're on a public street. Is that rationale gone now? Is that just evaporated? Jones has eliminated that? Is that what's happened? I think Jones stemmed from a recognition that we live in an era where the government's capacity to engage in surveillance far outstripped anything that we could have imagined in 1984 when if you had... They didn't really say that, though, did they? I think that Justice Alito in concurrence and Justice Sotomayor said that fairly explicitly, although you're correct that Justice Scalia writing for the majority didn't explicitly rest on that, but I think that concern is underlying a lot of what has been going on here. Where do you see trespass going? Do you think it's going to work its way back into our search and seizure law or do you think this is just a special area? I think that as surveillance technologies become more and more intrusive, the desire to preserve some modicum of privacy, which motivated Justice Scalia, may lead people to fall back on the trespass rationale as they did before and that it won't just be a matter of GPS tracking, but it'll become implicated in other areas as well. If I could take a moment, I wanted to mention that this Court would not be the first to find that the automobile exception applies to GPS that the automobile exception does not apply to GPS tracking because the Maynard decision for the D.C. Circuit reached the same conclusion. And furthermore, we don't believe that the good faith exception should apply, that Davis decision itself was narrow, referencing only binding appellate precedent and I agree... There is no binding appellate precedent on the matter. Correct. There's no binding appellate precedent here and I agree that there are great administrability problems with having to pick and choose between competing circuit precedents. Thank you very much. Thank you very much, Ms. Crump. We'll put five minutes on the clock for Mr. Zosmer. Thank you, Your Honor. Despite the fact that we were extremely generous... I'm very grateful for the Court's generosity. ...supporting time initially. There are two issues I want to address and one is the automobile exception, the other is Herring. With regard to the automobile exception, my friend Mr. Dreyer has conceded that there was probable cause. So what we're down to here, much as I'd like to argue reasonable suspicion, what we're down to here is the warrant requirement. I'm not sure whether he was conceding that or just conceding it for purposes of getting to the automobile exception. The rule is very clear from the Supreme Court and I strongly invite the Court, I know it probably has read, but to look again at Maryland v. Dyson. The simple fact of the matter is a warrant is not required for a car, period. This rule is so embedded in Supreme Court jurisprudence that when you go back 90 years to when they first announced it, they were talking about wagons. They weren't even talking about cars or mobile homes or the other things that they've later applied this to. A warrant is not required. The only argument that Mr. Dreyer had, and it's echoed in Ms. Crump's argument, as to why it should be, is exigency. And that's because here the government, couldn't you just go get a warrant? And the Supreme Court... If it's such a house and there's a car in the garage that's not mobile at the time, wouldn't you need a warrant then? Well, if it's within the curtilage of the property, then yes, you need a warrant for anything within the curtilage. But if it's not, then you don't. And what happened in Maryland... It has to be a situation where the car could be moved, doesn't it? Well, actually, I think there was a Supreme Court case. I'm trying to think now about where... Well, the answer is no, because there are automobile exception cases where the car is in police custody. It's not going anywhere. Well, they can do it in inventory. No, not just in inventory. A warrant is not required for a car. Maryland v. Dyson, the Supreme Court of Maryland, imposed the exigency requirement. They said, we're not going to let you have the automobile exception in this case, because you had time to get a warrant. The Supreme Court summarily reversed. They didn't even have oral argument. They had summarily reversed because there is no exigency requirement for the automobile. What case was that again? Maryland v. Dyson, Your Honor. I believe it's 1999 or 2000. And here you have a long-term investigation on technology that we're not quite sure that we understand, but it's much more advanced than anything we've seen. It gives law enforcement an incredible ability to do things that it could never do if it were... Even if you had an eight-person team, ten-person, whatever number of persons that you want on a team, GPS can do certain things that observation or surveillance just couldn't do. My answer will be the same, Your Honor. We still have a threshold to surpass. There has to be either reasonable suspicion or probable cause, depending on how Your Honors decide this. We have to have some suspicion. Your Honor's analogy before of Bobby Jones, we just want to keep an eye on him, that's not reasonable suspicion. There is a limitation on government conduct. The government should not be permitted to just go put a GPS on somebody's car and follow it for the next year. We now have to establish, we say reasonable suspicion, some say probable cause. The only issue I've been addressing is do you need a warrant and in the automobile area, that's decided. Well, let me ask you this question and I want to go back to something I asked you before. You mentioned 14 days because that would be the life of a warrant. You don't have a warrant here. Two days is a minimal intrusion. I get it. But shouldn't our view of minimal intrusion be considerably short of 14 days because that's an instance where you clearly would have a warrant and we'd be satisfied that a neutral magistrate had looked at this? That could be reasonable. But again, I think we have to argue the case before us. I don't think it's fair for Mr. Dreyer to argue well, if they hadn't found something in two days, who knows, they would have left it there. We have to deal with the facts we have and this is a two-day surveillance which I think is as minimal as you're going to find. If I could talk about the herring issue. This, again, is very important. It involves the application of the exclusionary rule. The exclusionary rule, the Supreme Court has said, is the last resort. The fact that you have a violation of the Fourth Amendment does not mean the evidence is excluded. The evidence is only excluded where you balance the culpability of the officer against the societal price to be paid by the exclusion of evidence which is enormous. And herring is just vital here. Herring is the case that says, when the Supreme Court does this balancing and it says only where police conduct is deliberate, reckless, or grossly negligent will the deterrent value of exclusion ever outweigh the high societal price there is to be paid. Who really made the decision in this case? It's not the... Well, as far as the advice given by the attorney, was that Justice Department policy or was that policy here? It was Justice Department. That was Justice Department policy and again, I would say, I don't know... I was involved at the time and I don't know of any prosecutor or most judges who saw this. Maynard is not applicable. Maynard is a 28-day surveillance and that's not what we're dealing with here. There was no authority. There were only circuit courts supporting this. But then you have the Supreme Court authority. But the question I'm focused on, that I appreciate... One other thing, sir. You talked about a limitation on time. Maybe I shouldn't even bring this up, but might there be issues of national security when monitoring for a longer period would be implicated? Is that something we have to worry about? Well, you don't have to worry about it in this case, but I think you do worry that there are other applications of this that make it important to confine the decision to the facts of this case, knowing that other situations like that could arise. But the last very important point I want to make, Your Honors, and I really appreciate the Court's indulgence, is that what you have to look at here is, were the agents reckless, deliberate, grossly negligent? Were they engaged in what the Supreme Court calls misconduct? And when you have a situation where not only four circuits have said this is okay, but you have a situation where the Supreme Court in Katz said all that matters for the Fourth Amendment is reasonable expectation of privacy. And the Supreme Court in Knotts and Carrow, I kept saying Kilo by mistake, but it's Carrow, in Knotts and Carrow said, you have no reasonable expectation of privacy. In Movement on Public Roads, where you have that body of law... What about the lack of binding circuit authority here? Well, and our submission is that in our case, looking at our facts, this is not culpable misconduct. The exclusionary rule exists only to sanction culpable misconduct. Sure. How about the technological difference? They made a great deal out of that. They said they should have recognized the evolution in technology in this case. Again, Herring speaks to that. Herring says we recognize that if we applied this deterrence to simple negligence, or even to no negligence at all, which is what you're talking about, just the state of the world, there would be some modicum of deterrent benefit. Officers would be more careful. They would do what someone suggested, which is to say, I'm just going to get a warrant. But the Supreme Court addressed that and said, no, it's not worth it. For that modicum of deterrent benefit, we are not going to apply the exclusionary rule and let gentlemen like the Katzens walk free of the criminal conduct that they engaged in. That's why Herring is so vital here. I'm not arguing with him. If you wanted to impose a rule that said, in an area of new technology, always get a warrant, that's fine. But that's profoundly inconsistent with Herring, which says we're dealing with a narrow exclusionary rule, it's our last resort, and it only applies to misconduct of officers. There was no misconduct here. You could have a case one day where I come in, hopefully I won't, but if someone like me came in and said, well, we had one district court case out in Kansas, and that's what we were relying on. That's a different case. But when you have agents who are relying... Does that mean you won't show up with that case? I will not, Alaska maybe, but Kansas no. I'm not going to include New Jersey yet. But here, where you have agents who are relying on this established body of analysis of the Fourth Amendment on reasonable expectation of privacy, how can they know that five justices are going to come along and find a violation based on a theory that's been more about it for so long? And in fact, four justices of the United States Supreme Court agree with these agents that the reasonable expectation of privacy thing is what should apply. There's no culpable misconduct. Thank you very much. Thank you, Mr. Sussman. Thank you to all of counsel. This is a fascinating case which was recognized at the outset, a basket of issues. We thank all of you for your very helpful arguments. We'll ask that a transcript be prepared, and we'll take the case under advisement. With that, we will ask the clerk to adjourn the proceedings. Thank you.